[No. 34615. Department Two. November 20, 1958.]

*In the Matter of the Estate of* ALFRED E. BUBB, *Deceased.* ROSE BUBB, *Appellant,* v. ALFRED JAMES BUBB, *as Executor, Respondent.*[1]

[1]Reported in 331 P. (2d) 859.

*Marian Garland, Jr., William R. Garland,* and *John A. Bishop,* for appellant.

*James Munro,* for respondent.

WEAVER, J.—This is an appeal from a decree denying the petition of Rose Bubb, surviving spouse, to have set aside to her, as property in lieu of homestead,

". . . the sum of $6,000.00 from that certain promissory note heretofore described, made by Jack C. Gumps and Grace L. Gumps, dated October 7, 1952, or its equivalent in value in cash."

Petitioner (appellant) and Alfred E. Bubb were married May 30, 1937. Mr. Bubb was employed at the Puget Sound Navy Yard at $6.04 per day. August 31, 1939, Mr. Bubb was retired on a pension of $86 per month. In 1940 or 1941, the parties separated; petitioner went to live with her daughter by a former marriage. Mr. and Mrs. Bubb lived separate and apart until Mr. Bubb's death, December 26, 1956. Mr. Bubb died testate, willing his property, which he designated as separate property, to his two children by a former marriage.

Prior to marriage, Mr. Bubb owned certain real property in Kitsap county and an undisclosed number of shares of Puget Sound Power and Light Company stock.

May 28, 1941, the parties executed a property settlement agreement which provided that all property standing in the name of either party before marriage, together with any property acquired after the date of the agreement, should remain and be the separate property of the respective par-

ties. The agreement provided that "This shall apply to notes, mortgages and all kinds of chattels. . . ."

October 7, 1952, more than eleven years after the property settlement agreement, Grace L. Gump (daughter of petitioner; stepdaughter of decedent) and her husband borrowed the sum of $8,700 from Mr. Bubb to purchase a home. They delivered their promissory note for this amount to him. There was an unpaid balance of approximately $6,500 on the note at the time of Mr. Bubb's death. It is from this note that petitioner first seeks an award in lieu of homestead.

It is undisputed that Mr. Bubb secured the funds to make this loan by borrowing a like sum from the National Bank of Commerce, pledging his Puget Sound Power and Light Company stock as security. After numerous periodic payments, he paid the balance due on the note, $6,628.05, to the bank on July 13, 1953.

■ We cannot agree with petitioner's contention that the court erred when it found the Gump note to be the separate property of Mr. Bubb. First, the money which the Gump note represents was not only acquired by use of his separate credit, but is directly traceable to Mr. Bubb's separate property—his Puget Sound Power and Light Company stock—which, it is admitted, he owned prior to marriage. Second, it appears that Mr. Gump sold certain real property owned by him before marriage for $13,100. In the absence of proof to the contrary, it must be assumed that he paid his separate obligation to the bank with his separate funds. *Jones v. Davis*, 15 Wn. (2d) 567, 131 P. (2d) 433 (1942); *In re Kruse's Estate*, 52 Wn. (2d) 342, 294, 324 P. (2d) 1088 (1958).

■ The aforegoing is sufficient to sustain the court's conclusion that the Gump note was the separate property of Mr. Bubb; and, having been "otherwise disposed of by will" (RCW 11.52.024), it was not subject to the petition to set aside property in lieu of homestead.

The petition, however, prays in the alternative for "its equivalent in value in cash." This requires us to examine

the court's conclusion that the property settlement agreement, entered into between petitioner and decedent, was a valid and binding agreement.

RCW 26.16.210, provides:

"In every case where any question arises as to the good faith of any transaction between husband and wife, whether a transaction between them directly or by intervention of a third person or persons, the burden of proof shall be upon the party asserting the good faith."

From this statute, petitioner argues that the property settlement agreement is presumptively fraudulent. We do not agree. Although, on numerous occasions, this court has scrutinized, with particular care, transactions between husband and wife and agreements affecting their property rights, and, if the facts warrant, has set aside such agreements, it has never held that such agreements or transactions are presumptively fraudulent. *In re Madden's Estate*, 176 Wash. 51, 28 P. (2d) 280 (1934); *Hamlin v. Merlino*, 44 Wn. (2d) 851, 272 P. (2d) 125 (1954).

The record discloses that petitioner knew, either at the time of her marriage or shortly thereafter, that Mr. Bubb owned two tracts of realty and certain Puget Sound Power and Light Company stock prior to marriage. Petitioner's own testimony is the source of the court's finding of fact that, at the time the property settlement was entered into by the parties,

". . . she was of sound and mature judgment; she fully understood the terms of the separation agreement; she signed the same freely and voluntarily and no person made any promises or representations to her to induce her to sign the said agreement; she was not forced or coerced to sign the agreement by any person; that after signing said agreement she did not expect to receive any help or support from the deceased, . . ."

We conclude, as did the trial court, that the property settlement was a valid and binding agreement.

The record fails to disclose any property in decedent's estate upon which the petition to set aside property in lieu

of homestead may operate; therefore, it was not error to dismiss the petition.

The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.