[No. 35255. Department One. June 16, 1960.]

BARBARA JONES, *Appellant*, v. ESTHER A. JONES, *Respondent.*[1]

---

[1]Reported in 353 P. (2d) 441.

*Sweeney & Hunter*, for appellant.

*Kimball & Clark*, for respondent.

DONWORTH, J.—The decisive question presented by this appeal is whether the trial court was correct in decreeing that two deeds executed by a husband conveying two certain tracts of land to his second wife, pursuant to a property settlement agreement made by them prior to a Nevada divorce, should be set aside and declared void as to the husband's ex-wife to whom he owed accrued and unpaid child support allowed by the divorce decree obtained by the ex-wife.

In order to understand the legal problem involved, it is necessary to set forth the rather complicated marital difficulties of Thomas C. Jones (herein referred to as Jones). The material events are briefly noted in chronological order as follows:

September 15, 1953: Respondent Esther Jones (the first wife) was divorced from Jones by the decree of the superior court for Douglas county. She was given custody of their three minor children, and he was ordered to pay her $350 per month for their support. She also received $20,000 in cash from Jones, which is not involved in this case. Appellant knew of the existence of this obligation prior to her marriage to Jones.

January 7, 1954: Jones was married to appellant Barbara Brown Tugg (his second wife) in Bellingham. At that time she had a son by a prior marriage who was of high school age. Shortly after their marriage, the parties moved to Okanogan.

November 18, 1954: A son was born to Jones and appellant.

April, 1955: Jones, who with appellant had been living

in Okanogan, went to British Columbia where he bought three tracts of land near Clinton, on which he operated a cattle ranch. These parcels contained more than 2,000 acres and cost $50,000. He spent $15,000 on improvements to the property and $20,000 for cattle.

June 1, 1955: When school was closed for the summer, appellant went to British Columbia to join Jones, taking with her her son by her first marriage and her infant son.

September 15, 1955: During the summer appellant became very unhappy over her husband's relationship with a woman who was put in charge of the Canadian cattle ranch, and on the above date she left Jones and went to Reno, Nevada, to obtain a divorce from him. Her son by her first marriage remained on the ranch.

October 21, 1955: Appellant and Jones executed a property settlement agreement, which recited that they desired to make a full and final settlement of all their property rights and claims. (The principal provisions of this instrument will be referred to later in this opinion.) On the same date, Jones executed and delivered to appellant the two deeds which are attacked in this present action as being fraudulent conveyances.

November 1, 1955: Appellant's complaint in her divorce action was filed in Reno. Jones was represented at the hearing (held that day) by a Reno attorney to whom he had given a power of attorney. The court granted appellant a divorce from Jones on the ground of extreme mental cruelty. The decree awarded appellant the custody of their infant son and settled their property rights in accordance with the property settlement agreement of October 21, 1955.

November 9, 1955: Appellant returned to Clinton, British Columbia, to obtain her personal belongings and to bring back to Waterville her son by a former marriage. For several weeks Jones pleaded with her for a reconciliation. The woman who had been the cause of their marital difficulties moved off the ranch. On November 24, 1955, she and Jones were remarried at Vernon, British Columbia.

June 18, 1956: Appellant personally recorded with the proper county auditors the two deeds above referred to,

which had been delivered to her by Jones on October 21, 1955, pursuant to the property settlement agreement. By one deed, Jones conveyed to appellant the Gritsch wheat farm in Douglas county (containing seventy-seven acres valued at approximately $100 per acre). By the other, he conveyed to her one hundred fifty-eight acres of hay and grazing land in Kittitas county (valued at $30,000). With each deed, appellant filed an affidavit claiming exemption from the one per cent sales tax on real estate transfers, on the ground that each was a conveyance between spouses made pursuant to a divorce decree.

(Jones has made no support payments to his first wife for their three children since the recording of these two deeds.)

On the following day appellant, with the consent of respondent, took the three children on the trip back to Clinton to see their father. They were not returned to respondent, and she finally went to Clinton on October 4, 1956, and brought them home.

August 21, 1956: Appellant left Jones in Clinton for the second time and for the same reason (*i.e.* the woman referred to as causing the first divorce was back on the Canadian cattle ranch again and the same intolerable conditions again existed). Appellant spent the fall and winter with her mother in Waterville and, in March, 1957, moved to the Kittitas county farm, where she has since resided.

September 21, 1956: Appellant commenced this action to restrain the sheriff of Douglas county from selling the Gritsch wheat farm under a certain execution which had been issued in the case of Esther Jones (respondent herein) versus Thomas C. Jones, based on a judgment for seven hundred dollars (being two months' support payments which were then delinquent). Appellant obtained an order directing the sheriff to show cause why he should not be enjoined from selling the property. In her affidavit she averred that she was the owner of the property proposed to be sold, which was conveyed to her by the deed executed by Jones October 21, 1955. In her complaint she alleged her ownership of the property and stated that its sale by the

sheriff would create a cloud on her title and cause her irreparable damage in her farming operations on the property. She prayed that her title be quieted and that the sheriff's sale be enjoined.

September 27, 1956: It was stipulated between the prosecuting attorney and appellant's then counsel that the sheriff's sale would be postponed from September 28 to October 25, 1956, and that the hearing on the show cause order should be continued to that date.

October 25, 1956: Another stipulation was filed, permitting respondent to interplead as a party defendant, releasing the sheriff from all responsibility in the premises and requiring appellant not to sell, encumber, or transfer the property until further order of the court. An order in accordance with this stipulation was entered.

July 25, 1957: Respondent filed her answer and cross-complaint. Her affirmative defense alleged:

"That on or about October 21, 1955, Thomas C. Jones transferred the property described in the complaint to plaintiff; that said transfer was for the sole purpose of placing said real estate beyond the reach of the children of Thomas C. Jones, and to prevent any levy of execution in behalf of said children for their support and maintenance; that although the plaintiff and Thomas C. Jones purportedly obtained a divorce in Reno, Nevada on the 2nd day of November, 1955, the same is null and void for the reason that the Nevada Court lacked jurisdiction of the parties; that said purported divorce and property settlement agreement was collusive and was entered into by plaintiff and Thomas C. Jones for the sole purpose of defrauding defendant Esther Jones and the minor children of Thomas Jones, of support money."

In her cross-complaint respondent alleged that appellant and Jones were married January 7, 1954, at which time he owned, as his separate property, the Gritsch wheat farm in Douglas county and the farm in Kittitas county. Her charges of fraud in the conveyance of these parcels of land by Jones to appellant were contained in paragraphs 3, 4, 5, and 6 of her cross-complaint, reading as follows:

"III. That on or about the 1st day of November, 1955, the plaintiff and Thomas C. Jones, by agreement, obtained a

divorce in Reno, County of Washoe, State of Nevada, the same being Cause No. 159214 in the Second Judicial District of Washoe County, Nevada; that as part of the fraud practiced upon the defendant, Esther A. Jones, and the minor children of Esther A. Jones and Thomas C. Jones, Thomas C. Jones transferred all of the hereinabove described real estate to the plaintiff for the sole purpose of removing the property from execution by Esther A. Jones; that prior to October 21, 1955, the plaintiff and Thomas C. Jones had removed themselves from the State of Washington and were residents of British Columbia, Canada.

"IV. That immediately subsequent to November 1, 1955 the plaintiff returned to her residence in British Columbia and on November 24, 1955 plaintiff and Thomas C. Jones obtained a marriage license in Vernon, British Columbia, Canada and thereafter had performed a marriage ceremony in the United Church of Canada in Vernon, British Columbia.

"V. That on June 18, 1956, the plaintiff took the minor children of Thomas C. Jones to British Columbia and on the same date recorded the deeds received in the alleged divorce property settlement agreement; that on and after this date Thomas C. Jones failed and refused to make any support payments as provided in the decree of divorce entered in the Superior Court of Douglas County on the 15th day of September, 1953; that, in addition thereto, Thomas C. Jones has kept himself removed from the jurisdiction of the Superior Court of Douglas County by residing in the Province of British Columbia, Canada; that said minor children are now being supported by the welfare department of the County of Spokane, State of Washington.

"VI. That the purported divorce, property settlement agreement and remarriage of plaintiff and Thomas C. Jones was a part of a plan and scheme of said parties to unlawfully avoid the payment of support money as provided by the decree of divorce between the defendant Esther A. Jones and Thomas C. Jones, husband of the plaintiff; that said deeds given by Thomas C. Jones to plaintiff were made without consideration and for the purpose of defrauding defendant Esther A. Jones of support money for her minor children."

(Respondent's motion to make Jones a party defendant to the action was denied August 26, 1957.)

May 28, 1958: Appellant filed her reply to respondent's answer and cross-complaint, in which she set forth her

version of her marital difficulties with Jones, her Nevada divorce from him, her reconciliation and remarriage, and the fact that she had, on January 9, 1958, been granted a decree of divorce from Jones in the superior court for Kittitas county.[2] Appellant specifically denied respondent's charges of fraud as follows:

"Replying to Paragraph VI of defendant's Cross-Complaint plaintiff denies each and every allegation therein contained and the whole thereof, and specifically denies her Property Settlement Agreement and remarriage was a scheme between Thomas C. Jones and plaintiff to defraud the defendant as evidenced by the whole pattern of actions by Thomas C. Jones as alleged herein, all of which finally culminated in the separation and divorce of the plaintiff from Thomas C. Jones in the State of Washington through no fault of the plaintiff."

October 1, 1959: This case came on for trial before the court sitting without a jury. The only two witnesses were appellant, who testified at length, and respondent, who testified rather briefly. Twenty-five exhibits were admitted in evidence. At the close of the case the trial court took the matter under advisement and wrote a memorandum opinion in favor of respondent. Thereafter, the court made findings of fact and conclusions of law, and entered a judgment setting aside the two deeds involved in this action.

Appellant has appealed from the judgment, and in her brief she sets forth seven assignments of error.

In our opinion, assignment No. 3, which assigns error to the trial court's finding of fact No. 10, is decisive of this appeal. In finding of fact No. 10, the trial court found:

". . . that Barbara Jones failed to sustain the burden of proving the good faith of the transfers to her as provided by R.C.W. 26.16.210."

■ Contrary to respondent's contention, appellant has sufficiently complied with Rules on Appeal 42(1)(f) and

[2]This default decree dissolved the marriage status existing between appellant and Jones based on findings of cruelty, inhuman treatment, personal indignities and conduct rendering life burdensome on Jones' part. The findings refer only to the marriage of January 7, 1954, which took place at Bellingham. This was the marriage purportedly dissolved by the Nevada decree.

43, as amended, effective January 2, 1953, RCW Vol. 0, by setting forth that portion of finding of fact No. 10, quoted above, at page thirty-nine of her opening brief.

The following excerpts from the trial court's memorandum opinion disclose its reasoning with respect to finding of fact No. 10:

"The Defendant [Esther Jones] claims that the Plaintiff [Barbara Jones] and Thomas C. Jones defrauded her when he conveyed his property in Washington to the Plaintiff.

"Ordinarily, the party claiming fraud has the burden of proving the fraud. Barbara Jones claims the conveyance to her was in good faith, and was a result of a property settlement agreement at the time of divorce.

"R.C.W. 26.16.210 provides that, where any question arises as to the good faith of any transaction between husband and wife, the burden of proof shall be upon the party asserting the good faith. Therefore, it appears that, in this case, the plaintiff would have the burden of proof to show the good faith of her transaction with Thomas C. Jones.

" . . .

"The evidence seems to be clear that Barbara Jones went to Nevada solely for the purpose of obtaining a divorce, and that she never had any intention to live there for any other purpose, and that neither she nor Thomas C. Jones ever had a domicile in Nevada, and therefore, the Nevada Court did not obtain jurisdiction to entertain the action for divorce, and the Decree was entirely void.

"The Nevada Decree, being void, leaves the property settlement agreement between Barbara Jones and Thomas C. Jones, without consideration. It becomes merely a contract between husband and wife, and the deeds conveying the property to Barbara Jones, must be judged as conveyances between husband and wife, during their marriage.

" . . .

"The deeds from Thomas C. Jones to Barbara Jones were recorded while she was still his wife, and since the recording of the deeds, no support money has been paid by Thomas C. Jones, to the Defendant.

"It appears to the Court that the conveyance by Thomas C. Jones, of his property in Washington, to his wife, Barbara, was made for the purpose of placing his property in Washington beyond the reach of the Defendant, and that the Plaintiff was aware of this purpose, or had sufficient knowledge of her husband's affairs, to cause her to be aware of his

purpose. She has not maintained the burden of showing the good faith of this transaction between herself and her husband, Thomas C. Jones. (See R.C.W. 26.16.210 cited above.)"

■ The trial court was correct in applying RCW 26-.16.210 to the case at bar. A property settlement agreement between husband and wife fixing the character of their respective interests is governed by this statute. *In re Madden's Estate,* 176 Wash. 51, 28 P. (2d) 280 (1934). Thus, the burden of proof of showing the good faith of the conveyances herein was correctly placed upon appellant. If she sustained this burden, then the trial court erred in setting aside the conveyances.

Conclusions of law Nos. 1 and 2 read as follows:

"I. That the Reno divorce decree obtained by Barbara Jones on the 2nd day of November, 1955, was void on the grounds and for the reason that Barbara Jones did not become domiciled in the State of Nevada and that the Reno court had no jurisdiction.

"II. That the agreement between Thomas C. Jones and Barbara Jones, purporting to be a property settlement agreement, whereby Thomas C. Jones was to convey the property above described, situated in Douglas and Kittitas Counties, to Barbara Jones, was part of a scheme to defraud the defendant and the deeds issued, as contemplated in said agreement, are void for lack of consideration."

It is clear from the memorandum opinion and conclusions of law Nos. 1 and 2, *supra,* that the trial court was of the view that the validity of the conveyances here in question depended in large part upon the validity of the divorce obtained by appellant in Nevada.

■ The validity of the Nevada decree is, in our opinion, immaterial. This is not a property settlement agreement entered into to become effective only upon either party's *first* securing a divorce from the other. Not a word about divorce is mentioned throughout the entire instrument. The agreement does not state that it must be approved by a court in a divorce decree or other court order before it begins to operate. *Cf. Smith v. Smith,* 36 Wn. (2d) 164, 217 P. (2d) 307 (1950). To the contrary, the agreement was exe-

cuted by the parties as of October 21, 1955, and became fully effective on that date. As for the element of consideration, the agreement recites:

" . . . that in consideration of the mutual promises, agreements and covenants contained herein, it is covenanted, agreed and promised by each party hereto, to and with the other party hereto, as follows: . . . "

The agreement then goes on to enumerate the various covenants and conveyances of the parties, and makes it clear that the consideration for the conveyances to Barbara Jones is her conveyance to Thomas Jones of certain other property and a release of all of her claims against his property, including any claim for support and any dower rights she might have in the Canadian property. Although in her real-estate excise tax affidavits, appellant stated that the conveyances were made to her pursuant to a divorce decree, such statement is obviously false, as the deeds were fully executed over a week prior to the divorce decree.

This property settlement agreement was operative as a contract independently of the Nevada divorce proceedings, and we hold, as a matter of law, that it was not void for lack of consideration.

The only matter remaining for our consideration is whether the property settlement agreement was entered into in good faith by the parties thereto. Good faith is a question of intent. *Petrovitsky v. Smith,* 86 Wash. 151, 149 Pac. 641 (1915). This court has never held that transactions between husband and wife are presumptively fraudulent. *In re Bubb's Estate,* 53 Wn. (2d) 131, 331 P. (2d) 859 (1958).

The evidence discloses that prior to her trip to Reno, Nevada, appellant was experiencing serious marital difficulties because of her husband's relationship with another woman. As far as the record discloses, her sole purpose in going to Reno was to secure a divorce, and not to thereby defraud Esther Jones by vesting in appellant the title to all of the real property of Thomas Jones in Washington. As previously pointed out, appellant did not acquire her title to such properties by virtue of the divorce decree, but rather by virtue of the property settlement agreement which was

entirely executed (as to the two conveyances referred to herein) before the Nevada divorce action was begun. The trial court was also of the opinion that the sole purpose of appellant in going to Reno was to secure a divorce. The trial court stated in its memorandum opinion:

"The evidence seems to be clear that Barbara Jones went to Nevada solely for the purpose of obtaining a divorce, . . ."

Also, finding of fact No. 5 reads, in part:

"That at least six weeks prior to November 2nd, 1955, Barbara Jones went to Reno, Nevada, for the sole purpose of obtaining a divorce; . . ."

If the property settlement agreement was executed for the purpose of defrauding Esther Jones, then why did Thomas Jones continue making support payments for eight months after the execution thereof? Furthermore, if the purpose of the agreement were to defraud Esther, it would seem that appellant would have recorded the deeds immediately instead of waiting for eight months before doing so. The fact that Thomas Jones ceased making support payments as soon as appellant recorded the deeds seems to us to be of no significance.

The validity of the conveyances herein must be determined as of the time of their execution and not as of the time of their recording. Respondent would have a stronger case if it were shown that the support payments ceased immediately after the execution of the deeds.

Respondent cites *Armstrong v. Armstrong*, 100 Wash. 270, 170 Pac. 587 (1918), and *Carroll v. Carroll*, 18 Wn. (2d) 171, 138 P. (2d) 653 (1943), in support of the trial court's judgment.

We think both cases are readily distinguishable on their facts. In the *Armstrong* case, *supra*, a conveyance from the husband to his second wife was held to be fraudulent as to his first wife. The divorce decree dissolving the husband's first marriage awarded to him *all* of the property that had been acquired by himself and his former wife during their marriage, and he was ordered to pay alimony in the sum of thirty-five dollars per month to his former wife.

Prior to his marriage to the second wife, *and in considera-tion thereof,* the husband agreed, in writing, to convey to her after their marriage was consummated *all* of the property awarded to him by the divorce decree. The conveyance was executed after the marriage was consummated, and the husband then defaulted in the alimony payments. This court held that the conveyance was fraudulent as to the first wife since, in effect, the conveyance made it impossible for the first wife to collect her alimony and the second wife knew that the transfer would have such effect. It is to be further noted that the husband and his second wife were still married and living together as husband and wife at the time the first wife brought the action.

The *Carroll* case, *supra,* involved an action by a divorced wife against her former husband and his sister to set aside a deed to certain real property given by him to his sister. We held that the conveyance was in reality one of gift and was made in trust for *the use of the husband himself.* We set the conveyance aside as fraudulent as to the divorced wife, as it appeared that the husband's sister (the grantee) had at least constructive notice of the circumstances surrounding the transfer.

The intent of appellant as manifested by her conduct herein is entirely consistent with that of good faith and fair dealing. Finding of fact No. 10, wherein the trial court found that appellant had failed to sustain the burden of proving the good faith of the transfers to her, is more in the nature of a conclusion of law and, in our opinion, is not supported by the record.

We think appellant sustained the burden of proving the good faith of the transfers to her as imposed by RCW 26.16.210, and for that reason the judgment of the trial court, holding such transfers to be null and void, must be reversed and respondent's cross-complaint dismissed. Appellant is entitled to the relief prayed for in her complaint and is awarded her costs in this court.

It is so ordered.

WEAVER, C. J., MALLERY, FINLEY, and FOSTER, JJ., concur.

---

September 29, 1960. Petition for rehearing denied.