*In the Matter of the Marriage of* PAUL D. COHN,
*Respondent, and* DEBBIE D. COHN,
*Appellant.*

*Phelps R. Gose* and *Sherwood, Tugman, Gose & Reser,*
for appellant.

*Diehl R. Rettig* and *Loney, Westland, Raekes, Rettig &
Sonderman,* for respondent.

McINTURFF, J.—This is an appeal from an order denying appellant Debbie Cohn's motion to vacate a decree of dissolution as it pertains to the division of property. The case turns upon the trial court's failure to set aside both an antenuptial agreement dated January 27, 1972, and a property settlement agreement entered into at the time of the dissolution. Both agreements are attacked on the grounds that the appellant did not sign them on independent advice and with full knowledge of her rights, and that a full disclosure had not been made to her of the amount, character and value of the property involved.

The trial court found that prior to January 27, 1972, Debbie Cohn and Paul Cohn talked about marriage and the execution of an antenuptial agreement; that Paul Cohn advised Debbie Cohn that his property had a total value of approximately $195,000 and she advised him of her potential inheritance from her mother of an interest in a farm. He had his attorney in Washington prepare the agreement which was signed by both parties in California. Some of the provisions of the agreement are set out in the margin below.[1] The court found that Debbie Cohn did not consult with an attorney before signing the agreement and that no one advised her to do so. At the time she executed the agreement, she was 21 years old, a high school graduate and had completed approximately two–thirds of her college course leading to a bachelor's degree. The trial court found that at the time she signed the agreement she was an adult possessed of average or better mental faculties, not acting under duress, undue influence, or under pressure of Paul Cohn. The court further found that Paul Cohn made a full disclosure to Debbie Cohn of his assets and other material matters. The trial court in arriving at these findings, considered and found that Debbie wanted to marry the "man" and didn't care if he was worth $1 or $10 million.

[1]The antenuptial agreement provides in part:
"I
"All property now owned by the parties or which may hereafter be acquired by either of them by gift of inheritance, as well as all accruals and increments to such

In the fall of 1974 the parties decided to dissolve their marriage, and a list of their community and separate property was prepared. The trial court found that the parties decided that the community property should be divided and that Paul Cohn would take his separate estate as sole and separate property. The trial court further found that Debbie Cohn knew the value of her husband's separate estate at the time the parties reached their agreement, and that since she had worked within the juvenile court with an attorney and since the same attorney had prepared a real estate closing for the parties, they decided to have him handle their dissolution. When they went to his office, he asked whether each was going to have an attorney, to which they responded negatively; and they presented him with the list of all property. The trial court found that the parties decided that Paul Cohn would receive the family home and she would get $2,500 representing one-half of the community equity therein. The balance of the community property was divided in half, and Paul Cohn kept his separate property. The trial court further found that at the time she signed the property settlement agreement, she was aware of Paul Cohn's estate and that at that time she was not acting under duress, undue influence or pressure from

property, shall be the sole and separate property of the party owning and/or acquiring such property.

"II

"Each of the parties hereby releases and relinquishes all right, title, claim or interest which they may now have or which they may hereafter acquire in the property of the other as herein agreed to be the sole and separate property of the other. In the event of termination of this marriage by any court order, judgment or decree, neither party will claim any right, title or interest in the said sole and separate property of the other, and it is agreed that any such court shall not have the authority, right, power or jurisdiction to give any such right, title and interest in such sole and separate property of one party to another in any such proceedings. In the event of the death of one party, the survivor shall not have any right, title or interest by virtue of any laws of courtesy, dower, intestate succession, homestead, in lieu of homestead or any similar such law in the said sole and separate property of the other or make any such claim thereto, directly or indirectly.

him or anyone and was of sound mind and memory. The court found that in all regards Paul Cohn acted in good faith towards Debbie Cohn.

Debbie Cohn assigns error to those findings of fact as well as others, and contends the trial court erred in concluding as a matter of law that Paul Cohn met his burden of showing good faith in his dealings with Debbie Cohn in that he fully disclosed his assets to her and did not make any misrepresentations or practice any fraud upon her.

█ There is no argument between the parties that the burden of proving good faith in a transaction between a husband and wife is upon the party asserting the good faith—in this case Mr. Cohn.[2] We agree with the trial court that Mr. Cohn has met his burden, and we affirm the order denying Debbie Cohn's motion for the vacation of the decree of dissolution as it pertains to the division of property. Since the assertions of bad faith and the lack of independent counsel surround the execution of both the antenuptial and property settlement agreements, we analyze both in light of applicable case law. The rules of *Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972), and *Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954), apply to the agreements in question. As the court said in *In re Marriage of Hadley*, 88 Wn.2d 649, 654, 565 P.2d 790 (1977):

> Although these cases involved prenuptial agreements and the trial court characterized the agreement here as neither prenuptial, nor post–nuptial, nor made in contemplation of dissolution but rather "analogous to a

[2]RCW 26.16.210.

Burden of proof in transactions between husband and wife. In every case, where any question arises as to the good faith of any transaction between husband and wife, whether a transaction between them directly or by intervention of third person or persons, the burden of proof shall be upon the party asserting the good faith.

*See also Jones v. Jones*, 56 Wn.2d 328, 353 P.2d 441 (1960). Likewise, the burden of establishing full disclosure or fairness in the case of an antenuptial agreement lies with the party asserting its validity. *Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972).

community property agreement," we believe the principles set forth in *Friedlander* and *Hamlin* are applicable here. The tests are: (1) whether full disclosure has been made by respondent of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by the spouse of her rights.

First, the trial court found that both agreements were voluntarily and knowingly signed. There is substantial evidence to support those findings. The antenuptial agreement was signed a few minutes prior to the time the parties signed their application for marriage license. However, there is evidence that the parties discussed the agreement at least several months prior to the time it was prepared. Although Mrs. Cohn testified that she and Paul Cohn had not discussed the matter, the face of the agreement belies her testimony. It includes reference to a potential inheritance of hers in a farm belonging to her mother, and there is no evidence that Mr. Cohn's attorney would have had that knowledge had it not been for the discussion between the parties. Likewise, the evidence surrounding the execution of the property settlement agreement confirms the trial court's finding that it was freely and voluntarily entered into. Although Mrs. Cohn testified that she felt rushed into signing the agreement, she further testified that she did not at any point indicate to the lawyer who had drafted it that she felt she was being rushed or that she was signing anything that she did not fully intend to sign. Ironically, both Mr. and Mrs. Cohn signed the agreement, and Mr. Cohn signed the petition for dissolution, at the attorney's home on their way to see a show and have dinner in Walla Walla. Mr. Cohn testified it was an amicable settlement, and as the trial court noted there was nothing to indicate that the parties were in anything but agreement.

On the issue of whether Debbie Cohn was aware of the amount, character and value of the property involved, the testimony is in direct conflict. On one hand, Mr. Cohn testified that Debbie was fully aware of the extent of his

property; on the other hand, she testified that she was never aware, including at the time of the hearing on her motion, of the value of his estate. The requirement of *Friedlander* that the spouse have full knowledge of the value of her interest in the husband's property is necessary to insure the wife will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter into the contract. To be avoided is the procurement of the contract "by deliberate concealment of the amount and value of the husband's property."

The *Friedlander* court did not require that the spouse know the exact financial status of the other spouse.[3] In fact, at one point there is an indication that circumstantial evidence that she reasonably should have known appears to be sufficient. We note that this was a critical point of departure between the majority and minority opinions in *Hadley.* There the majority found sufficient knowledge by Mrs. Hadley of the amount, character and value of the property because prior to signing the agreements she traveled to each of the major businesses and was kept informed of the developments by her husband. Furthermore, the majority found that she had engaged another lawyer to examine the agreements but that he did not render advice to her because he needed further information which she failed to provide.[4]

---

[3]Quoting from 2 A. Lindey, *Separation Agreements and Ante–Nuptial Contracts* § 90, at 84 (rev. ed. 1967), the *Friedlander* court said at page 300:

> where the provision made for the wife is disproportionate to the property of the husband, a presumption arises that the contract was procured by deliberate concealment of the amount and value of the husband's property; and the husband or those claiming under him against the wife have the burden of showing that she had full knowledge of the value of her interest in the husband's property, *or that the circumstances were such that she reasonably should have had such knowledge.*

(Footnotes omitted; italics ours.)

[4]The minority, on the other hand, found that at the time the agreements were signed Mrs. Hadley, because of an illness, depended upon her husband to a greater degree than normal. Cited by the minority as factors indicative of a lack of knowledge on her part are the facts that she was not aware that the agreements

In this case there is sufficient evidence to conclude that while Debbie Cohn might not have known of the exact financial status of Paul Cohn's resources, circumstances were such that she reasonably should have had such knowledge. We note that the parties lived together prior to the time they entered into the antenuptial agreement, and Debbie Cohn testified that during that time she knew Paul Cohn had independent financial means. Secondly, the parties had discussed their financial status to such a degree as to allow an attorney to draft the antenuptial agreement. Thirdly, material relating to the separate accounts was mailed to the Cohn residence, often left open in the house and placed in a desk to which both parties had access. Fourthly, there was reference to a tax loss involving carry—over of Mr. Cohn's separate funds of more than $40,000 in the property settlement agreement. Those and other circumstances support the findings of the trial court that Mrs. Cohn was apprised of the nature of Mr. Cohn's separate property sufficiently so as not to have been prejudiced by any lack of information in entering into either agreement. Further, there is no evidence of deliberate concealment by Mr. Cohn, which the *Friedlander* court sought to avoid.

Error is also assigned to the trial court's conclusion "that it is not a legal requirement that each party obtain independent legal advice before execution of either an antenuptial or property settlement agreement where the facts disclose that each party knows that they have the right to obtain independent legal counsel, each party has access to independent legal counsel and there has been no fraud,

would be used in the event of a divorce and the fact that the attorney she consulted was unable to give advice because he lacked the necessary information and since she did not have it, she was less qualified than he to make an informed decision. The minority states, at page 669, "The majority opinion argues the wife should have obtained the necessary material information she needed before she signed the agreements." Indeed, the majority said at page 665 that in concluding that while her failure to provide the necessary information to the lawyer "may have been an unfortunate omission on her part, it is unfair to penalize Mr. Hadley for it."

undue influence, pressure, coercion or misrepresentation practiced by one party to the other party."

We also agree with the trial court's conclusion as to the need for independent advice in the execution of either instrument. We do not read *Friedlander, Hamlin* or *Hadley* as requiring each party to a prenuptial or post-nuptial agreement, under all circumstances, to obtain or provide independent counsel for themselves or one another. *See Whitney v. Seattle–First Nat'l Bank,* 16 Wn. App. 905, 560 P.2d 360 (1977), *review granted,* 89 Wn.2d 1002 (1977). Rather, we think the thrust of *Friedlander* and *Hamlin* on that issue is that if advice is given, that it be from an independent party. This conclusion flows from *Hadley* where the majority states at page 655:

> The property status agreements were drafted by counsel who represented the Hadleys in both their business and personal affairs. Mrs. Hadley had spoken highly of this lawyer and he was available to her for independent consultation. At one time, Mrs. Hadley had engaged another lawyer to examine the agreements. However, he did not render legal advice to Mrs. Hadley because he needed further information which she failed to give to him. While this may have been an unfortunate omission on her part, it is unfair to penalize Mr. Hadley for it.

In *Friedlander,* the party seeking to uphold the antenuptial agreement indicated his wife had signed the agreement without objection knowing it involved certain properties. It was related to the court that an attorney for the plaintiff and plaintiff's brother, who was also an attorney, informed the wife generally of the nature and effect of the agreement. But the court found that neither lawyer could have discussed the agreement with her because it had not even been drafted at the time of the alleged discussions. We think the crux of *Friedlander* is stated at page 303:

> Further, the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights. . . . It is clear that defendant did not have such advice prior to signing the agreement. All advice was provided by the plaintiff, his

brother, Paul, and Mr. Monheimer. The prenuptial contract was even prepared by another of plaintiff's attorneys.

In this case, Mr. Cohn's attorney in Washington prepared the agreement, and although Mrs. Cohn did not discuss it with him, there is evidence she knew that it was being prepared for 3 or 4 months prior to the date it was executed. The property settlement agreement, on the other hand, was prepared by the attorney who filed the petition for Mrs. Cohn in the dissolution action. The evidence shows that he was selected by Mrs. Cohn over the attorney who had prepared the antenuptial agreement because she knew him through her work in the juvenile court and because he had prepared a real estate closing for the couple. If Mrs. Cohn did not understand the provisions of the property settlement agreement or its effect, there is no evidence that she ever let her husband or the attorney know of her lack of knowledge. As in the case of *In re Marriage of Hadley, supra,* it would be unfair to penalize Mr. Cohn for Mrs. Cohn's omission to request further information.

Judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.