IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39796-3-III |
| | ) | |
| SCOTT GILBERT DASHIELL, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| GENESIS ANNA DASHIELL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Genesis Dashiell appeals after the trial court enforced

a division of property contained in a separation agreement executed a few months before

dissolution proceedings commenced. Because Scott Dashiell, prior to execution of the

agreement, failed to disclose the value of his 50 percent interest in a company awarded to

him, we conclude the trial court erred by enforcing the property agreement. We remand

for a just and equitable distribution of the Dashiells' estate. We also award Genesis[1] her

reasonable attorney fees at the trial court level and on appeal, pursuant to RAP 18.1 and

CR 37.

---

[1] Because the parties share a last name, for clarity, we will refer to them by their first names.

FACTS

On December 15, 2021, Genesis and Scott, both pro se, jointly filed a petition for legal separation and legal separation agreement.

*Property agreement*

The Dashiells' separation agreement, signed and notarized, addressed the residential schedule and support for their minor daughter. The agreement also distributed the Dashiells' assets and liabilities. For ease of reference, we refer to this portion of the agreement as the "property agreement."

While the Dashiells' property agreement did not expressly assign values to the couple's six real properties—five of which the agreement initially allocated to Scott— Genesis, when negotiating the agreement, had herself proposed values that Scott did not dispute. However, the property agreement allocated to Scott two limited liability corporation interests to which the couple had never assigned any value. One of those interests—a 50 percent share of Cascade Equipment Company, LLC (CES)—represented the small business that Scott operated, earning him $9,383 per month. Scott did not acquire any interest in the business until after his marriage to Genesis.

In an e-mail sent five months after the Dashiells executed their separation agreement, Scott informed Genesis that CES owed over $440,000 on inventory lines of credit. In other postseparation correspondence, Scott identified some of CES's assets,

including a GMC truck ($16,000), a "roll back" vehicle ($11,000), a dump truck

($10,000), two trailers ($12,000), and miscellaneous tools and property (either $15,000 or

$25,000).  Clerk's Papers (CP) at 85.  Because Scott failed to disclose the value of all

CES assets, however—such as inventory, accounts receivable, undistributed earnings,

and goodwill—the value of Scott's 50 percent interest in CES could not be approximated.

*Failed dissolution petition*

In March 2022—three months after separating and filing their separation

agreement—the Dashiells jointly filed to dissolve their marriage.  The couple's

dissolution petition incorporated by reference their separation agreement.  However,

the commissioner who considered the Dashiells' petition rejected it on the grounds that

90 days had not passed since the couple had filed.  Notwithstanding this, the

commissioner agreed to enter a temporary family law order enforcing the terms of the

Dashiells' separation agreement.  By that time, the Dashiells had amended their

agreement to reallocate certain properties and require Scott to pay Genesis $50,000 to

settle the dissolution.

*Renewed dissolution petition*

Despite the commissioner's instruction to wait 90 days before finalizing the

dissolution, Scott, after just two weeks, returned to court alone to a different court

commissioner and had the decree of dissolution entered.  By Scott's account, he had

heard from the clerk's office employees that he could do this without waiting 90 days.

By Genesis's account, Scott had rushed the dissolution through because she had told him

she would hire a lawyer.

*Successful vacation and ensuing motions*

After learning that Scott had finalized their dissolution, Genesis secured

representation and moved to vacate the dissolution order. The court granted the motion

because the second court commissioner had entered the decree sooner than 90 days after

the Dashiells had filed their dissolution petition.

Two months later, Genesis served Scott with interrogatories seeking financial

information. When Scott did not respond to her interrogatories, Genesis moved to

compel discovery and requested attorney fees. In response, Scott filed a motion to

enforce the property agreement and to enter a decree of dissolution. Genesis opposed the

motion, and argued the property agreement was unenforceable because there was

evidence it awarded significantly more net assets to Scott, and because Scott had failed to

fully disclose CES's assets.

The court took the matter under advisement and later entered an order granting

Scott's motion to enforce the property agreement. The court found and concluded in

relevant part:

4

> 3.      . . . [T]he separation agreement was carefully crafted and agreed. It outlined values on [numerous assets and debts]. The parties declined to enter values on the six pieces of [real] property they own and divided the property initially with [Scott] receiving five out of six pieces but renegotiated later, on March 16, 2022, to grant [Scott] four out of six pieces of property. The parties also agreed on March 16, 2022, that [Scott] would pay [Genesis] $50,000.00.
>
> 4.      Examining the settlement agreement, not considering the value of the real property, some bank accounts, and the business, [Genesis] received total assets and liabilities in the amount of $227,536.14 plus two pieces of real property. [Scott] received total assets and liabilities of -$308,292.00 plus four pieces of real property and 100 [percent] of a 50 [percent] partnership in [CES,] and 100 [percent] ownership in SGD Properties LLC. The court cannot find that this agreement was unfair, particularly considering the sophistication of the parties and the decisions not to pursue or list values related to some assets.

CP at 285.[2]

Genesis timely appealed to this court.

## ANALYSIS

### A.      ENFORCEABILITY OF THE PROPERTY AGREEMENT

Genesis argues the trial court should not have enforced the property agreement because, absent a valuation of the couple's business interests, the court could not have determined whether the agreement was fair. We agree the trial court erred.

---

[2] The parties do not explain how the trial court arrived at these values. Suffice it to say, the values mean little, given the extensive real property and business interests the court could not value, the latter because of Scott's nondisclosures.

Where parties to a marriage enter into a separation contract, the contract,
except the parenting plan, "shall be binding upon the court unless it finds, after
considering the economic circumstances of the parties and any other relevant evidence
produced by the parties . . . that the separation contract was unfair at the time of its
execution." RCW 26.09.070(3). In this context, trial courts determine fairness according
to a two-part test: (1) whether the parties, when forming the agreement, fully disclosed
"the amount, character and value of the property involved," and (2) whether the parties
entered into the agreement "'voluntarily [and] on independent advice,'" with knowledge
of their rights. *In re Marriage of Cohn*, 18 Wn. App. 502, 506, 569 P.2d 79 (1977)
(quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 654, 565 P.2d 790 (1977)); *see also*
*In re Marriage of Shaffer*, 47 Wn. App. 189, 194-95, 733 P.2d 1013 (1987) (harmonizing
RCW 26.09.070(3) and *Cohn*).

Here, the trial court upheld the Dashiells' "carefully crafted" separation agreement
on the grounds that "the sophistication of the parties and the decisions not to pursue or
list values related to some assets" precluded a finding of unfairness. CP at 285.
However, given the two-part test set forth above, the "decisions" to which the court
referred precluded it from enforcing the agreement.

As stated above, a separation agreement lacks fairness where the parties do not
fully disclose "the amount, character and value" of the property to be divided. *Cohn*,

6

18 Wn. App. at 506. While Scott met this requirement with respect to most of the properties, he did not meet it with respect to at least one substantial property awarded to him—his 50 percent interest in CES.

Scott, while negotiating the property agreement, made no disclosures at all about CES's assets and liabilities. While Scott disclosed the salary and commissions he earned from the company ($9,383 per month), this figure reflects only income, and was not a disclosure of the value of his 50 percent interest in CES.

In subsequent correspondence, Scott did disclose that CES owed over $440,000 on inventory lines of credit, and further disclosed the value of some of its assets. However, Scott did not disclose the value of CES's inventory, accounts receivable, undistributed income, and goodwill. We conclude that the trial court erred by enforcing the property agreement. Moreover, because of the extent of Scott's nondisclosures, the trial court should have ordered Scott to answer the discovery propounded to him.

B.      CR 2A AND RCW 2.44.010(1)

Scott argues that CR 2A and RCW 2.44.010(1) authorized the trial court to enforce the property agreement. We disagree.

Under CR 2A,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Similarly, under RCW 2.44.010(1),

> the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his or her attorney.

Together, these provisions "avoid disputes regarding the existence and terms of settlement agreements." *Morris v. Maks*, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993). However, nothing in CR 2A nor RCW 2.44.010(1) supports the notion that agreements, rendered unenforceable by statute, become enforceable once filed in court.

C.     ATTORNEY FEES

Genesis, citing RAP 18.1 and CR 37, requests an award of attorney fees, both below and on appeal, for Scott's refusal to answer her discovery requests.

RAP 18.1 permits an award of reasonable attorney fees on appeal if recoverable under applicable law. CR 37(a)(4) requires the party, whose conduct necessitated the

8

motion to compel discovery, to pay the moving party reasonable attorney fees, unless the court finds that the opposition to the motion was substantially justified.

Here, the governing statute and decisional authority clearly require full disclosure of any valuable property, which would include Scott's 50 percent interest in CES. Scott does not even attempt to argue he complied with this requirement with respect to CES. We conclude that Scott's opposition to Genesis's motion to compel was not substantially justified. Subject to Genesis's compliance with RAP 18.1(d), we grant her request for reasonable attorney fees incurred at the trial court related to her motion to compel and on appeal. Because Scott's defense of the motion to compel was his counter motion to enforce the property agreement, the attorney fees incurred by Genesis in opposing Scott's counter motion are, in our view, related to her motion to compel and thus are recoverable.

Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Staab, J.

9