[No. 11966.  Department Two.  November 16, 1914.]

MINNIE R. YEAGER, *Respondent*, v. FRANK F. YEAGER,
*Appellant*.[1]

HUSBAND AND WIFE—CONVEYANCES BETWEEN—FRAUD—INADEQUACY
OF CONSIDERATION—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY.  The
burden being upon the husband to show that a transfer to him from
his wife upon an inadequate consideration was freely made and fair
and just, a deed from a wife to a husband will be canceled on the
ground of fraud and inadequacy of consideration, where the husband,
living apart from his wife, and acting in bad faith in pretending to
bring about a reconciliation, procured from the wife a deed of prop-
erty of considerable value, on an agreement, secured by bond, to pay
her fifteen dollars a month as long as she conducted herself with pro-
priety and remained his wife, and thereupon hastily commenced ac-
tion and secured a divorce, and ceased to make any further pay-
ments, making the consideration grossly inadequate.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered October 4, 1913, upon findings
in favor of the plaintiff, in an action for the cancellation of a
deed.  Affirmed.

*L. C. Stevenson* and *C. M. Phoenix*, for appellant.

*Frank D. Nash*, for respondent.

PER CURIAM.—The appellant and respondent were formerly
husband and wife.  They intermarried in Douglas county,
Washington, on September 16, 1905.  At that time, the ap-
pellant owned one hundred and sixty acres of land which he
had theretofore acquired under the homestead laws of the

[1]Reported in 144 Pac. 22.

United States. The respondent, prior to the marriage, had entered under the homestead act one hundred and sixty acres of land adjoining that of the appellant, title to which she acquired subsequent to the marriage. The parties lived together on the property until the year 1909, when they exchanged it, with certain personal property, for city property, situated in the city of Tacoma. They thereafter removed to Pierce county, taking up their residence at Orting. At the last named place, they lived together until the summer of 1912, when the respondent left the appellant. On September 12, 1912, shortly after the separation, the appellant procured from the respondent a deed to the Tacoma property, purporting to convey to him the community interest of the respondent therein, executing to her an agreement wherein he promised to pay her fifteen dollars per month so long as she conducted herself with propriety and remained his wife. After procuring the deed and executing the agreement, he commenced an action of divorce against her, obtaining a decree therein on February 4, 1913. Subsequent to the separation and prior to the divorce, the appellant gave the respondent small sums of money and paid small bills for her, and subsequent to the execution of the deeds and the agreement, paid the sums stipulated to be paid in the agreement until the entry of the divorce decree, the whole aggregating, as the court found, about $65. The decree of divorce made no mention of the property rights of the parties, and the appellant has contributed nothing to the support of the respondent since its entry.

On July 12, 1913, the respondent began the present action against the appellant to set aside the conveyances made by her purporting to convey to the appellant her community interest in the Tacoma property, basing her cause of action upon want of consideration and fraud and deceit on the part of the appellant. Issue was taken on the complaint, and a trial had, which resulted in a decree cancelling the conveyances. From the decree, this appeal is prosecuted.

The appellant's assignments of error question the sufficiency of the evidence to sustain the decree. This evidence we shall not review in detail, but in our opinion it fully justifies the conclusion of the trial court. In the first place, the property was conveyed for a wholly inadequate consideration. It is true, the appellant testified that the greater part of the property given in exchange for it was his separate property, but it was not denied that his wife's homestead went with his in the exchange, and the cash differences were paid out of moneys earned during the marriage relation. His homestead may have been of greater value than hers, but her interests in the property, if less than an entire community interest, was certainly much greater than the inconsiderable sum she received for it.

Again, we think the evidence justifies the conclusion that the respondent did not fully understand the effect of the instruments executed. They were executed at a meeting of the parties held in the office of the appellant's attorney, at which the respondent had no representative or legal adviser. The meeting was brought about by a person employed by the appellant for that purpose, and was held just after the respondent had returned from a private sanitarium. The ostensible purpose of procuring the meeting was to effect a reconciliation between the appellant and respondent and induce her to live with him again as his wife, and at the meeting this proposition was made to respondent by the appellant. On her refusal to again live with the appellant, a settlement was proposed, and the deeds and contract were then executed. But we cannot believe that the effort at reconciliation was made in good faith. If the appellant's witnesses are to be believed, he then knew that the respondent had not conducted herself with propriety since their separation—that she had been "consorting" with Greek men, and that "Greeks were running to her room." Again he testifies that he figured he could not get ahead by being married; that he wanted deeds so he could handle the property, so he could do something, and not "set

there like a bump on a log." With this knowledge and this idea in mind, it is hardly possible that he desired a reconciliation, and we can but believe that his object in broaching it was to distract his wife's mind, which perhaps, is not of the strongest, from his real purpose. This thought is supported by the haste in which he began an action for divorce against her after the instruments were executed.

But we shall not pursue the inquiry. The law is well settled that the burden is upon the husband to show that a tranfer made to him by his wife for an inadequate consideration was made freely and that the transaction was fair and just. There is no such showing in the present case, and the judgment will stand affirmed.