[No. 24768. Department Two. January 4, 1934.]

*In the Matter of the Estate of* ELLIS CARSON MADDEN, *Deceased.*[1]

[1]Reported in 28 P. (2d) 280.

52

*C. F. Wallace*, for the petitioner.

*Hanna & Gemmill* and *Sam M. Driver*, for the executor.

BLAKE, J.—The deceased, Ellis Carson Madden, and Wilma Margaret Madden 'were married in 1922. Neither of them was, at that time, possessed of any worldly goods, except personal belongings. Madden died February 28, 1933, leaving an estate subsequently appraised at $29,551.28. He left a will by which he left his widow one dollar, attempting to bequeath or devise the entire estate to his blood relatives. He named one Nicholson, husband of one of his sisters, as executor. The will was admitted to probate March 2, 1933, and Nicholson was appointed executor.

Mrs. Madden filed a petition, alleging that the estate consisted entirely of community property, and claimed he'r right to be appointed administratrix with the will annexed, by virtue of Rem. Rev. Stat., § 1419. The executor answered, denying the material allegations of the petition, and affirmatively alleged that the estate consisted wholly of separate property of deceased, by virtue of a property settlement agreement entered into between the deceased and the petitioner in 1930. Upon the issues so joined, the court entered a decree by which it determined that a property settlement agreement had been entered into by deceased and petitioner on January 27, 1930, and that certain of the property was community estate and certain of it separate estate; and ordered that letters of administration with

the will annexed be issued to the petitioner on the community estate. Both the petitioner and executor appeal.

Several questions are presented on petitioner's appeal. On various grounds, it is contended that the instrument held by the trial court to constitute the property settlement agreement is insufficient in law as such. We shall assume, without deciding, that it is sufficient.

The executor contends that, the court having found that a property settlement agreement was entered into, the only conclusion, in law, to be drawn therefrom is that the entire estate consists of separate property of deceased. We are inclined to this view of the issue presented. In other words, if the alleged property settlement agreement is valid, the entire estate consists of separate property; if the alleged property agreement is invalid, the entire estate consists of community property. In order to determine whether the alleged property settlement agreement is valid or invalid, it will be necessary to consider the facts disclosed by the record in considerable detail. Before doing so, however, it will be well to consider a general principle of law relating to agreements between husband and wife.

While the common law disabilities of married women have been removed by statute in this state, the confidential relationship existing between husband and wife is still recognized to exist. See Rem. Rev. Stat., §§ 1214, 5828. In such relationships of confidence, courts of equity examine with great care transactions between the parties and agreements affecting their property rights. The burden, in such cases, is on him seeking to sustain the agreement to prove that it was fair and entered into with full knowledge of the facts by the one reposing confidence. Perry on Trusts (7th ed.), § 194; 2 Pomeroy, Equity Jurisprudence (4th

ed.), §§ 955, 956, 957. Specifically, the doctrine is applied to agreements between husband and wife. 2 Pomeroy, Equity Jurisprudence, § 963; *Beals v. Ares,* 25 N. M. 459, 503, 185 Pac. 780; *McDougall v. McDougall,* 135 Cal. 316, 67 Pac. 778; *Kilbourne v. Kilbourne,* 156 Wash. 439, 287 Pac. 41. In the case of *Beals v. Ares, supra,* the court said:

"Under this rule, as we shall later show, the burden would be upon the husband in all transactions between them to show the fairness of the transaction, the adequacy of the consideration, and the absence of fraud and undue influence. . . .

"In view of the foregoing authorities, the following propositions may be accepted without question:

"(1) That the transaction in question was presumptively fraudulent.

"(2) That the duty devolved upon the husband to show (a) the payment of an adequate consideration, (b) full disclosure by him as to the rights of the wife and the value and extent of the community property, and (c) that the wife had competent and independent advice in conferring the benefits upon her husband."

In the instant case, it is not necessary to hold (and we do not go to the length of holding) that such an agreement is presumptively fraudulent.

The statute, however (Rem. Rev. Stat., § 5828), does impose upon the executor here the burden of establishing the fairness and good faith of the agreement. The statute provides:

"In every case where any question arises as to the good faith of any transaction between husband and wife whether a transaction between them directly or by intervention of a third person or persons, the burden of proof shall be upon the party asserting the good faith."

Independent of the statute, the principle therein declared has been approved as well settled law by this

court in *Yeager v. Yeager,* 82 Wash. 271, 144 Pac. 22, where the court said:

"The law is well settled that the burden is upon the husband to show that a transfer made to him by his wife for an inadequate consideration was made freely and that the transaction was fair and just."

But the executor contends that this rule has been departed from in *Erfurth v. Erfurth,* 90 Wash. 521, 156 Pac. 523; *Worden v. Worden,* 96 Wash. 610, 165 Pac. 508; and *Parsons v. Tracy,* 127 Wash. 218, 220 Pac. 813. We do not so read those cases. The first case involved a deed of specific property from husband to wife. Construing Rem. Rev. Stat., § 5828, in connection with Rem. Rev. Stat., § 10572, providing that a husband or wife may convey directly to the other community property, and that such deed shall divest the grantor of all community interest in the property, the court held that the *deed* was entitled to the same presumption of good faith as other conveyances. In the *Worden* and *Parsons* cases, we think it appears clearly that the wives entered into the settlement agreements with full knowledge of their rights and of the value of the properties interchanged. Furthermore, in each case it was determined that the transaction was fair and just. The essential holding of those cases is, in our view, not out of harmony with the holding in *Yeager v. Yeager, supra.*

We shall now examine the evidence in this case, under the guidance of the principle announced in the *Yeager* case.

Shortly after their marriage, deceased and petitioner moved to Wenatchee, where, about two years later, deceased opened up a collection agency. This business was conducted under corporate organization. That the business was extremely profitable, is evidenced by the fact that from it deceased had built up,

in six or seven years, an estate of thirty thousand dollars.

In the latter part of December, 1929, or the early part of January, 1930, deceased and petitioner drove to California on a pleasure trip. After spending some time in southern California, they started home. On the road, they started quarreling over petitioner's daughter by a former marriage. Petitioner declared that she would not return to Wenatchee with deceased, because of his hostile attitude toward her daughter. They stopped at a hotel in San Jose, where the deceased drew up, and the petitioner signed, the following instrument:

"San Francisco, Cal.
"Jan. 27, 1930
"Received of Ellis C. Madden $500. This and an additional $500 (to be paid within six months from this date) accepted as full settlement of all community property, real and personal.
"Wilma M. Madden."

At the time this instrument was executed, deceased gave petitioner a draft or cashier's check for five hundred dollars. They thereupon separated; she remaining in California, and he returning to Wenatchee. On December 12, 1930, after receiving the balance of the additional five hundred dollars, petitioner prepared and signed the following instrument: ·

"Ellis C. Madden                    Dec. 12, 1930.
"I hereby acknowledge receipt of $50 last and final payment on settlement agreed upon, whereby I, Wilma M. Madden, do relinquish any and all claim whatsoever I, Wilma M. Madden, may have ever had upon any real personal or otherwise property in the possession of Ellis C. Madden.
"Signed (My Mark)
"Wilma M. Madden."

In the meantime, pursuant to the agreement of January 27, 1930, petitioner, at the request of deceased,

executed quitclaim deeds to three pieces of property in Chelan county. Afterward, at the request of deceased, she signed, but did not acknowledge, another quitclaim deed to other land in Chelan county.

In 1932, deceased brought an action for divorce against petitioner. She defaulted, and interlocutory decree was entered September 22, 1932. No final decree was, or could have been, entered, since Madden died February 28, 1933. The interlocutory decree did not attempt to settle any property rights between the parties, and did not refer to the alleged property settlement agreement of January 27, 1930. In any event, the interlocutory decree could not in anywise affect petitioner's interest in the estate. *In re Martin's Estate,* 127 Wash. 44, 219 Pac. 838; *In re Chisholm's Estate,* 159 Wash. 674, 294 Pac. 973, 76 A. L. R. 279.

Neither the receipt of December 12, 1930, nor the quitclaim deeds can be considered as enlarging or modifying the terms of the instrument of January 27, 1930. At most, they only evidence an intention on her part to abide by that instrument as a settlement of property rights. For this purpose, they are not essential, because she admits that was her understanding of the effect of the instrument. But she says that she signed it without advice, and without knowledge of the value of the community property. She assumed that, because she was leaving Madden, she thereby forfeited all property rights. He did not advise her to the contrary, nor did he disclose to her the value of the property she was relinquishing.

That the sum paid by Madden was grossly inadequate, when compared with the appraised value of the estate, is not open to argument. But the executor contends that it was not so when the instrument of January 27th was signed. We cannot agree to that. As we have said, the entire estate was the outgrowth

of the collection agency business. There is no direct evidence of the value of that business on January 27, 1930. The stock of the company was appraised in 1933 at one thousand dollars, but it was obviously a very valuable asset on the former date, if, as the executor contends, the bulk of the estate was acquired by deceased subsequent thereto. There is some positive evidence that leads to such inference. The manager of the company testified that, over a period of five months, during the construction of the Rock Island dam, the gross receipts of the business averaged four thousand or five thousand dollars per month; that the fees charged on collections ranged from thirty per cent to fifty per cent; that, during this period, the gross receipts ran forty per cent more than under ordinary conditions.

From this testimony, we think the following fairly deductible: That, during the period mentioned, the gross income of the business was one thousand five hundred to two thousand dollars per month; that in ordinary times the gross income was from eight hundred to one thousand two hundred dollars per month. There is no testimony as to the cost of doing business, but conceding the executor's contention that the bulk of the estate was acquired subsequent to January 27, 1930, the expense of doing business was slight as compared with the gross income. We have no way of knowing what the net income was at the time the settlement was made, but that it was substantial there can be no doubt. In addition to this, the evidence positively shows that there was tangible personal property of the value of $8,460 on that date.

All of this, the petitioner relinquished without knowledge of her rights; without knowledge of the character or substance of the estate or its value; without independent advice or advice from the deceased as

to her rights or the value of the estate she was relinquishing. We think the consideration of one thousand dollars was grossly inadequate, and that the executor has failed to sustain the burden of proving that "the transaction was fair and just."

The judgment will be reversed, and the cause remanded with directions to the court to enter an order declaring the entire estate community property and directing letters of administration with the will annexed to be issued to the petitioner on the whole estate.

TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.

BEALS, C. J., dissents.

