[No. 1579-3.   Division Three.   February 16, 1977.]

HELEN H. WHITNEY, *Appellant*, v. SEATTLE-FIRST NATIONAL BANK, ET AL, *Respondents.*

*George F. Velikanje* and *Velikanje, Moore & Shore,* for appellant.

*Harry Hazel, James S. Scott,* and *Smith & Scott,* for respondents.

MUNSON, C.J.—Helen H. Whitney appeals from an order dismissing her claim to set aside an agreement executed coextensively with the execution of wills by her and her late husband. We affirm.

Mrs. Whitney and the late Harrell B. Whitney were married October 27, 1962; at that time they were of modest means. Two children were born of this marriage. Largely due to Mr. Whitney's business acumen, their economic holdings increased until at the time of his death on April 25, 1973, the assets in his estate exceeded half a million dollars.

On January 11, 1971, the parties executed their respective wills and the agreement which Mrs. Whitney sought to

have the court rescind. The effect of the wills and the agreement was different, depending on which of the parties died first.

If Mrs. Whitney predeceased Mr. Whitney, the wills and the agreement provided that all of the property would go to Mr. Whitney. Neither document made any provision for Mrs. Whitney's children by a prior marriage. Mrs. Whitney testified that her husband had assured her that if she predeceased him, he would make ample provision for these children.

If Mr. Whitney predeceased her, the effect of the documents was that all of their property, including her community share, was put into an irrevocable trust created by Mr. Whitney's will, with the respondent bank as trustee. The trust made ample provision for her and the children of this marriage. The trustee was directed to provide the necessary monies first from trust income and, if that was insufficient, then from Mrs. Whitney's share of the trust res, and upon the expiration of that, then from Mr. Whitney's share. In addition, Mrs. Whitney had the power of appointment over her share of the res.

Mrs. Whitney contends that it was not until several months after her husband's death that she discovered the trust was irrevocable and that she was unable to have any control over her community share without the consent of the trustee. It is undisputed that both the wills and the agreement were executed by the parties in their lawyer's office with the attendant witnesses on the date set forth thereon. The Whitneys were contemplating a 3-week vacation in Hawaii and wanted to have their affairs in order. Mrs. Whitney testified that her purpose in executing the wills and agreement at that time was to insure proper guardianship for the children in the event something should happen to the Whitneys during the vacation.

The challenged findings reflect that: prior to the execution of the documents the Whitneys met with their lawyer and discussed their assets and a general estate plan; on the date of execution, the attorney explained the documents

and their legal significance to the Whitneys; and lastly, the estate plans were neither inadequate, unfair, nor provided "a detriment disproportionate to the benefits" insofar as they relate to Mrs. Whitney.

Mrs. Whitney presents two basic contentions challenging the court's order: the respondents have failed to sustain the burden of proof upholding the validity of the agreement; and Mrs. Whitney was entitled to independent advice and counsel prior to execution of the documents.

As to the first contention, the parties mutually agree that the burden of proof in showing the good faith of the transaction falls upon the respondents. RCW 26.16.210.[1]

The trial court resolved the conflicting evidence in favor of the respondents and found that the burden of proof had been sustained. There is substantial evidence in support of that finding; a reexamination is thus precluded in this court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Secondly, Mrs. Whitney asks that this court establish that whenever spouses contract with each other for the disposition of their property, each spouse should be advised by their attorney to seek independent advice to insure they enter into the agreement with full knowledge of their rights and the effect of the agreement. She draws an analogy between estate planning and matters involving antenuptial and property settlement agreements, such as were discussed in *Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972) and *Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954).

*In re Estate of Madden*, 176 Wash. 51, 53, 28 P.2d 280 (1934), commented upon the predecessor of RCW 26.16.210 in light of the confidential relationship between husband and wife, stating:

In such relationships of confidence, courts of equity ex-

---

[1]"Burden of proof in transactions between husband and wife. In every case, where any question arises as to the good faith of any transaction between husband and wife, . . . the burden of proof shall be upon the party asserting the good faith." Cf. *Peste v. Peste*, 1 Wn. App. 19, 459 P.2d 70 (1969); *In re Estate of Madden, supra.*

amine with great care transactions between the parties and agreements affecting their property rights. The burden, in such cases, is on him seeking to sustain the agreement to prove that it was fair and entered into with full knowledge of the facts by the one reposing confidence.

Quoting from *Beals v. Ares*, 25 N.M. 459, 503, 185 P. 780 (1919), the court continued in *In re Estate of Madden*, *supra* at 54:

"Under this rule, as we shall later show, the burden would be upon the husband in all transactions between them to show the fairness of the transaction, the adequacy of the consideration, and the absence of fraud and undue influence. . . .

"In view of the foregoing authorities, the following propositions may be accepted without question:

"(1) That the transaction in question was presumptively fraudulent.

"(2) That the duty devolved upon the husband to show (a) the payment of an adequate consideration, (b) full disclosure by him as to the rights of the wife and the value and extent of the community property and (c) that the wife had competent and independent advice in conferring the benefits upon her husband."

*In re Estate of Madden*, *supra*, dealt with a property settlement agreement executed 3 years prior to the husband's death. That court refused to hold that such an agreement was "presumptively fraudulent."

In *Friedlander v. Friedlander*, *supra*, the court commented upon a prenuptial agreement, noting that a relationship of mutual confidence and trust existed, and that the basic purpose of the burden-of-proof rule was based upon common sense for the purpose of preventing any overreaching by the one in whom the trust was reposed.

The court further stated that if the agreement failed to make a fair and reasonable provision for the wife, "she must at least have a full and fair disclosure of all material facts relating to the amount, character and value of the property involved . . ." *Friedlander v. Friedlander*, *supra* at 302. Additionally, " 'she must sign freely and voluntarily, on competent *independent advice*, and with full

knowledge of her rights.' " (Italics ours.) *Hamlin v. Merlino, supra* at 864, quoting Lindey, *Separation Agreements and Ante-Nuptial Contracts* § 90, at 794, 798 (rev. ed. 1953).

Factually, *In re Estate of Napier*, 55 Wn.2d 194, 347 P.2d 192 (1959), approximates this case; two wills and an agreement were executed whereby the wife agreed to convey her community share to the trust immediately upon the husband's death. Her husband predeceased her and the property was so transferred; after she remarried, she sought to have the agreement nullified. Based on the facts set forth therein, the court found that the good faith requirement had been met and that the agreement stood. There was no mention of any requirement for independent advice before execution of the estate plan.[2]

■ Here, the trial court found not only that Mrs. Whitney had ample time to examine the documents, but that she was an intelligent person, she was "generally aware of the nature and extent of the community assets," that she knew the community assets were of substantial value even though she had not actively participated in the accumulation of those assets in a business sense, and that she had no business experience.

The requirement of independent advice is only one factor to be considered in the fairness of the overall transaction. As noted in *Independent advice as essential to validity of transaction between persons occupying a confidential or fiduciary relationship*, Annot., 123 A.L.R. 1505, 1512-13 (1939):

A clear and important distinction certainly exists be-

[2]*Contra, Peyton v. William C. Peyton Corp.*, 23 Del. Ch. 321, 7 A.2d 737, 123 A.L.R. 1482 (1939); *Turner v. Leathers*, 191 Tenn. 292, 232 S.W.2d 269, 271 (1950); *cf.* 3 J. Pomeroy, *Equity Jurisprudence* § 951 *et seq.* (5th ed. S. Symons 1941), particularly § 956b. Apparently this issue was not persuasive to the majority in *In re Estate of Smith*, 68 Wn.2d 145, 411 P.2d 879, 416 P.2d 124, 19 A.L.R.3d 559 (1966), wherein an attorney had drafted the will of his life-long friend, who was for all practical purposes blind and unable to read, and after certain specific requests, he left a considerable amount of his estate to the draftsman lawyer and his secretary. The dissent found the "failure to advise the client to obtain the advice of another attorney appears as a suspicious circumstance." *In re Estate of Smith, supra* at 160.

tween saying that in particular circumstances a transaction could not be supported in the absence of independent advice, and saying that a general rule of equity exists which makes independent advice indispensable to the validity of transactions between persons occupying a fiduciary relationship.

Where it is plainly shown that a transaction was fair and free from objectionable influence, and especially where the person supposed to have been at a disadvantage is shown to have been of strong and independent mind and in a position to form an intelligent judgment, a requirement that in addition he must have had independent advice "would seem to be arbitrary and unnecessary."

We do not find that the estate plan was basically unfair nor that there was any undue influence or overriding exerted by anyone upon Mrs. Whitney to obtain her signature upon these documents. The trial court believed the testimony of the Whitneys' attorney that he reviewed the documents paragraph by paragraph with her and explained their legal significance. That finding is supported by substantial evidence.

It is not unusual for parties in the Whitneys' situation to create a trust for the benefit of the wife in the event the husband should predecease her. Such trusts are designed to relieve the wife of the responsibility of handling large amounts of money or property and to assure that she is not prey to others attempting to relieve her of her assets.

We conclude that parties interested in establishing an estate plan may be well advised to seek independent counsel, particularly in instances, such as this, where the wife is giving up certain rights. The utilization of independent counsel would forestall a challenge to the estate plan upon that basis. However, we decline to establish a requirement that independent advice must be sought or that a recommendation to seek independent counsel be expressed before such a plan is valid. Whether such advice was recommended, or, if recommended was taken, is but one factor to be considered in the determination of the overall fairness of the plan, the parties' awareness of its overall effect and

consequences, and the imposition of any undue influence in order to effect the execution of the necessary documents.

Judgment is affirmed.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied March 17, 1977.

Review granted by Supreme Court September 29, 1977.