[No. 22389-2-III.   Division Three.   April 21, 2005.]

*In the Matter of the Marriage of* KELLY B. MARZETTA, *Appellant*, and ALLAN L. MARZETTA, *Respondent*.

---

610

*Mary E. Schultz*, for appellant.

*Allen M. Gauper* (of *Salina, Sanger & Gauper*), for respondent.

¶1 Kurtz, J. — Allan and Kelly Marzetta were married for 13 years. At the time of the marriage, Mr. Marzetta owned substantial assets and operated his own company. When the couple divorced, the trial court was faced with the daunting task of dividing the parties' assets, setting the amount of child support for their three children, and determining Ms. Marzetta's need for an award of spousal maintenance. Both parties appeal. Ms. Marzetta challenges the trial court's decision, asserting the court (1) mis-characterized Mr. Marzetta's bonuses as separate prop-erty and (2) awarded an inappropriately low amount of child support given Mr. Marzetta's substantial wealth and income. Mr. Marzetta challenges the court's decision to grant an award of maintenance, asserting that the award

was not justified in view of Ms. Marzetta's assets and lack of financial need. Additionally, he contends the court abused its discretion by requiring spousal maintenance to be paid for 20 years.

¶2 On appeal, the essence of Mr. Marzetta's argument is that the monies he received from his separate property— whether denominated salary or bonus—greatly exceeded the value of his labor or skill. Consequently, he asked the court to assign a reasonable value to his labor, which would be community property, and to assign another value to the remainder, which would be separate property. He urges the court to distinguish between his duty to pay a reasonable amount for his services and his right to the proceeds of his separate property. He bases this argument on the parties' prenuptial agreement.

¶3 During the marriage, the business controlled by Mr. Marzetta paid bonuses to him. He used this income to purchase property. The trial court characterized both Mr. Marzetta's bonuses and the property he purchased with these bonuses as his separate property. Because we conclude Mr. Marzetta's bonuses were community property, we reverse the trial court's property division. Because the trial court was required to consider the division of property when determining maintenance, we reverse the trial court's award of maintenance. Finally, we conclude that the trial court did not abuse its discretion in its calculation of child support. We remand for further proceedings regarding the trial court's division of property and award of maintenance consistent with this opinion.

## FACTS

¶4 Allan and Kelly Marzetta married on March 5, 1988. At the time of their marriage, Mr. Marzetta owned his own company, Altek Machine & Molds, Inc., and had accumulated some wealth. In contrast, Ms. Marzetta had been working as a travel agent and had little income and no wealth. The couple has three children. Mr. Marzetta also has three children from his first marriage.

¶5 Prior to their marriage, the parties signed a prenuptial agreement. Neither party challenges the validity of the prenuptial agreement. Both parties were represented by competent counsel when the agreement was negotiated and signed.

¶6 The prenuptial agreement discloses that, at the time of the marriage, Mr. Marzetta had a net worth of $2,900,000 and received rental income of approximately $5,000 per month attributable to property he owned on Appleway and Mission Avenues.

¶7 The parties dispute the court's characterization of transactions involving property on Sullivan Road, Appleway properties, Marzetta Limited, and Anchorage Associates—as well as the court's award of child support and spousal maintenance.

¶8 *Sullivan Road Property.* In 1989, the Marzettas purchased property on Sullivan Road, where they eventually constructed their residence. In 1990 and 1991, Altek bought the adjacent pieces of property. Later, Mr. Marzetta purchased these properties from Altek. The source of the money for the purchase was Altek. Mr. Marzetta states the first payment was made with a 1994 year-end bonus and that the second payment was made with a 1995 mid-year bonus. Mr. Marzetta chose to take the money as bonuses, rather than stock dividends, to avoid double taxation.

¶9 Later, Mr. Marzetta purchased an additional parcel of property on Sullivan Road. The downpayment was paid for by a bank account that held contract receivables for the Frislie/Screen Tek sale. The parcel was paid off with a $109,000 bonus from Altek.

¶10 After these properties were purchased, Mr. Marzetta obtained quitclaim deeds from Ms. Marzetta transferring all of her interest in the properties to him. He did this on the recommendation of his attorney, Robert Lamp. Mr. Lamp believed that there might be an issue regarding whether Ms. Marzetta had a community property interest in the property. According to Ms. Marzetta, neither Mr.

Lamp nor Mr. Marzetta told her that she might be conveying community property to Mr. Marzetta. Mr. Lamp had previously prepared a will for Ms. Marzetta. In this instance, he was representing Mr. Marzetta's interest against Ms. Marzetta's interest.

¶11 The trial court determined that these properties were Mr. Marzetta's separate property even though they were purchased primarily with bonus income rather than stock dividends.

¶12 *Appleway Properties.* During the marriage, the parties also acquired commercial property on Sullivan Road, consisting of parcels C, D, E, and F. When acquiring these properties, Mr. Marzetta received a check from Altek, deposited the check into his personal account, and then purchased the property with a check from this account. Mr. Marzetta later decided to build on the property and took another personal loan from Altek to construct a building. He then wrote personal checks to the contractors. Later, Mr. Marzetta paid off the loans with bonus money of $589,780, a dividend payment of $454,000, and a loan. Subsequently, Mr. Marzetta transferred the debt obligation to Marzetta Limited Partnership.

¶13 At the time of trial, Mr. Marzetta owned parcels C, D, and E of the Appleway property, which were valued at $730,000. Parcel F, which contains the building, is owned by Marzetta Limited Partnership. The value of this property is $5.5 million. Marzetta Limited is owned 40 percent by Mr. Marzetta and 60 percent by his six children.

¶14 Ms. Marzetta executed a quitclaim deed transferring her interests in these properties to Mr. Marzetta. Mr. Marzetta considered these properties and the building to be his separate property because they were part of Altek—and he never wanted anyone to have an ownership interest in Altek except his children. Mr. Marzetta acknowledged that Ms. Marzetta understood the property to be his separate property and that she signed the deeds on this basis.

¶15 *Marzetta Limited.* Mr. Marzetta created the Marzetta Limited Partnership to hold parcel F, which

contained the Altek building. The reason he purchased this property from Altek was that his children were limited in the amount of Altek they could own. By creating Marzetta Limited, purchasing the property himself, and then transferring the property to Marzetta Limited, his six children would acquire a greater share of the ownership of this asset. If the asset remained in Altek, the children's ownership interest would be limited. When Mr. Marzetta quitclaimed parcel F, with its building, to Marzetta Limited, the children received gifts of their interest in the partnership.

¶16 While Ms. Marzetta understood that the partnership owned the building, she had also been told that she owned part of the building. Mr. Marzetta acknowledged that there was a document reflecting that both he and Ms. Marzetta owned an interest in the building. Mr. Marzetta also acknowledges that Altek advanced money to him for the land and construction. He repaid this debt with a series of dividends and bonus distributions. Ms. Marzetta quitclaimed any interest she had to Mr. Marzetta.

¶17 The court concluded that Marzetta Limited was part of Mr. Marzetta's separate property and assigned a value of $1,120,000 to Mr. Marzetta as he had quitclaimed 64 percent of the total assets in favor of his children. The court did not consider the remaining value. The total value of the partnership is $2,721,312.

¶18 *Anchorage Associates.* The prenuptial agreement indicates that Mr. Marzetta owned commercial property on Appleway. Mr. Marzetta wanted to sell the property and worked out a transaction whereby the purchasers would have early access to the building. In essence, the downpayment for the building was $200,000 of stock in Anchorage Associates. Eventually, the purchasers paid $435,000 and Mr. Marzetta used $285,000 to purchase an additional 15 units of Anchorage Associates. Of this second purchase—which is not at issue here—Mr. Marzetta placed 5 shares in his name and made a gift of 10 shares to Ms. Marzetta.

¶19 Ms. Marzetta contends that the community acquired an interest in the initial transfer of stock in Anchorage Associates because Mr. Marzetta paid no money in exchange for the units, and the consideration for the units was a promise by the marital community of future payment. The court found that the consideration given for the purchase of the stock was proceeds from the sale of the Appleway commercial property. Because the sale of this building did not occur until one year after the stock was received, Ms. Marzetta contends a community credit transaction occurred making the stock community property.

¶20 *Child Support.* In determining child support, the court concluded that the parties' incomes exceeded $7,000 per month. The court set child support at $3,000 per month, rather than the standard calculation of $2,370 per month.

¶21 *Spousal Maintenance.* The court granted Ms. Marzetta an award of maintenance of $3,000 per month for 20 years.

¶22 *Appeal.* Ms. Marzetta challenges the court's characterization of property and the amount of the award of child support. Mr. Marzetta challenges the court's award of spousal maintenance.

## ANALYSIS

¶23 *Mr. Marzetta's Bonus Income.* The trial court's characterization of property as community or separate is a question of law; consequently, review is de novo. *In re Marriage of Skarbek,* 100 Wn. App. 444, 447, 997 P.2d 447 (2000). But the factual support for the court's characterization requires only substantial evidence. *Id.* The court must characterize all property before it. *In re Marriage of Gillespie,* 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). The law favors characterization of property as community property unless there is no question of its separate character. *In re Marriage of Brewer,* 137 Wn.2d 756, 766-67, 976 P.2d 102 (1999).

¶24 Moreover, Washington courts have long held that a husband and wife may contractually modify the status of their property. *See Hamlin v. Merlino*, 44 Wn.2d 851, 864, 272 P.2d 125 (1954); *State v. Miller*, 32 Wn.2d 149, 158, 201 P.2d 136 (1948). Public policy favors prenuptial agreements. *Friedlander v. Friedlander*, 80 Wn.2d 293, 301, 494 P.2d 208 (1972). Prenuptial agreements are contracts subject to the principles of contract law. *In re Marriage of Burke*, 96 Wn. App. 474, 477, 980 P.2d 265 (1999).

¶25 The trial court here determined that all of the property purchased with Mr. Marzetta's bonus income was separate property because Mr. Marzetta could have paid himself the same funds as stock dividends. The court noted that the parties always understood that the assets in Altek were Mr. Marzetta's separate property. The court also determined that the transfers of land were done for estate planning purposes. By taking the money as bonuses, and then purchasing land that was transferred to the children, Mr. Marzetta accomplished the transfer and avoided adverse tax consequences. As a result, the court concluded that there were appropriate tax benefits and estate planning purposes for this decision and that there was nothing inappropriate about the manner in which the bonuses were paid.

¶26 Ms. Marzetta asserts the court erred by concluding that the Sullivan Road properties and the interest in Anchorage Associates were separate property. She contends that any purchase made with bonus income was community property, not separate property. Ms. Marzetta asserts the court erred in characterizing Mr. Marzetta's bonus income as separate property.

¶27 Under the terms of the prenuptial agreement:[1]

2. Al intends to remain chief operating officer of Altek for as long as he and his family own substantially all the capital stock

---

[1] The prenuptial agreement is included in part of the record that is designated as "confidential," which both parties excerpt and discuss in their briefs. This court cannot render an opinion without reference to the materials relied upon by the parties.

of Altek. In order to account to the community for his personal services while serving as chief executive officer of Altek, Al shall take all actions to cause himself to be paid a reasonable salary plus bonuses for his services on behalf of the corporation. In determining the salary for himself, Al shall cause to be determined what persons performing comparable duties with similar responsibilities are earning in the State of Washington and also determine the amount that is prudent for Altek to pay its chief executive officer.

Clerk's Papers (CP) at 45-46. The prenuptial agreement also provides that:

All property acquired during the marriage of the parties shall be presumed to be community property unless either Al or Kelly are able to demonstrate that such new property is purchased from the proceeds of separate property and title or registration to such new property is in the names of either of the parties individually.

CP at 48. These provisions of the prenuptial agreement are in accord with RCW 26.16.030, which renders all property acquired during a marriage community property. Moreover, all salaries or wages earned by either spouse becomes community property, granting each partner an undivided one-half interest in such community property. *Hinson v. Hinson*, 1 Wn. App. 348, 352, 461 P.2d 560 (1969).

¶28 During the course of the marriage, Mr. Marzetta determined his own compensation and would " 'decide what number to pick.' " Report of Proceedings at 1000. Similarly, Mr. Marzetta took whatever other funds he wanted as bonuses or loans. When Mr. Marzetta needed funds, he would tell the accountant at Altek what amount was needed, and the accountant would write a check.

¶29 Mr. Marzetta maintains that his bonuses were not salary because he paid himself a "reasonable salary" as required by the prenuptial agreement. In his view, any amount over a reasonable salary constituted his separate property. To support this argument, he provided expert testimony establishing that the salary he received was greater than the salaries of comparable executives.

¶30 But these arguments are unpersuasive. The terms of the prenuptial agreement are not ambiguous, and the agreement permits Mr. Marzetta to determine a "reasonable salary" and provides guidelines to determine this amount. Similarly, the terms of the agreement contain no limitation on the amount of his bonuses. Moreover, the terms of the agreement do not appear to allow any retroactive reconsideration of the amount of salary or bonus paid. The agreement states that: "Al shall take all actions to cause himself to be paid a reasonable salary plus bonuses for his services." CP at 45.

¶31 Mr. Marzetta also argues that because he could take the money as a bonus or a stock dividend, he was entitled to take a bonus, for tax advantages, and then, upon divorce, call the bonus a stock dividend. This argument is completely without merit. This type of unilateral decision is not authorized under the terms of the prenuptial agreement.

¶32 In short, the trial court erred by characterizing Mr. Marzetta's bonus income as separate property because this determination is contrary to the prenuptial agreement and RCW 26.16.030.

¶33 *Sullivan Road Property.* Mr. Marzetta purchased two parcels of land on Sullivan Road. Mr. Marzetta concedes that the first parcel was purchased for $320,000 with bonus money. He also concedes that the second parcel was purchased with a payment of $109,000 from bonuses, with the remainder of the purchase price paid for with money from another source. Because these properties were purchased with bonuses, the court should have considered Ms. Marzetta's interest in this property when determining the division of marital property.

¶34 *Appleway and Marzetta Limited Properties.* In part, the Appleway and Marzetta Limited properties were purchased with bonus income. For that reason, the court should have considered Ms. Marzetta's interest in these properties when determining the division of marital property.

¶35 *Quitclaim Deeds.* Mr. Marzetta next contends that the bonuses might have been community property when received, but Ms. Marzetta transferred her interest to him by executing quitclaim deeds when he used the bonuses to purchase property. He argues that this transaction is evidence of the parties' intent to characterize the bonus income as separate property to be placed in the trust for the children.

¶36 This argument fails for two reasons. First, the prenuptial agreement provides that "[i]f either party should . . . execute any instrument affecting title to the property of the other, such act shall not be construed as affecting . . . or abrogating the terms [of this agreement]." CP at 51.

¶37 Second, Mr. Marzetta has the burden of showing that Ms. Marzetta's transfer of her interest in the property for inadequate consideration was made freely and that the transaction was fair and just. *See Yeager v. Yeager*, 82 Wash. 271, 274, 144 P. 22 (1914).

¶38 Here, the evidence establishes that Ms. Marzetta did not understand that she was conveying a community property interest when she executed the quitclaim deeds. She received no consideration for the transfer of her interest in the property and she was not represented by counsel when the quitclaim deeds were executed. Significantly, the court apparently did not conclude that Ms. Marzetta executed the quitclaim deeds with knowledge of the nature of the transfers because the court crossed out that finding on the findings and conclusions filed. Moreover, the court mistakenly concluded that the quitclaim deeds to the Sullivan property "were not technically necessary, as the source of funds was separate property and Mr. Marzetta could have simply left the property in the corporation." CP at 467.

¶39 *Anchorage Associates.* Ms. Marzetta also contends the court mischaracterized the Anchorage Associates asset.

¶40 The character of property as community or separate is determined as of the date of acquisition. *In re*

*Marriage of White*, 105 Wn. App. 545, 550-51, 20 P.3d 481 (2001). Property acquired during the marriage has the same character as the funds used to purchase it. *In re Marriage of Zahm*, 138 Wn.2d 213, 224, 978 P.2d 498 (1999). The party asserting that an asset acquired during marriage is separate property must overcome the community presumption by clear and convincing evidence. *In re Marriage of Janovich*, 30 Wn. App. 169, 171, 632 P.2d 889 (1981).

¶41 The character of separate property continues through transfers if it can be traced and identified; the separate property is not rendered community property unless the separate property is commingled to the extent that it may not be distinguished or apportioned. *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 866, 855 P.2d 1210 (1993).

¶42 Mr. Marzetta entered into an agreement for the exchange of the Appleway commercial property for units in Anchorage Associates. The purchaser of the Appleway property was allowed to move into the building in return for a $200,000 reduction in the price. At the same time, Mr. Marzetta received shares in Anchorage Associates that he transferred into Marzetta Limited. More than one year after the purchaser moved into the building, the property on Appleway was sold and Mr. Marzetta used the proceeds to purchase the original block of units in Anchorage Associates and the 15 additional units.

¶43 Ms. Marzetta contends that the initial units received from Anchorage Associates are community property because the transaction was not completed for one year and was acquired by community credit. But Ms. Marzetta also acknowledges that the Anchorage Associates units were eventually paid for with proceeds from the sale of separate property.

¶44 Although the units were not paid for until the separate property was sold, the character of the property can be traced throughout the transaction. The court did not

err by concluding that the Anchorage Associates units were purchased by the proceeds from the sale of separate property.

¶45 *Remedy.* A trial court's failure to properly characterize property may be reversible error. *In re Marriage of Olivares*, 69 Wn. App. 324, 330, 848 P.2d 1281 (1993). But the mischaracterization of property does not necessarily require setting aside a property distribution that is otherwise fair and equitable. *In re Marriage of Gespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997); *see also In re Marriage of Hadley*, 88 Wn.2d 649, 656-57, 565 P.2d 790 (1977).

¶46 This court may affirm a mischaracterization of the property unless the reasoning of the trial court indicates that (1) the property division was significantly influenced by the erroneous characterization, and (2) it is not clear that the court would have divided the property in the same way in the absence of a mischaracterization. *Olivares*, 69 Wn. App. at 330.

¶47 Based on the record here, it is clear that the court was influenced by the erroneous characterization of the property and it is not clear that the court would have divided the property the same way in the absence of the mischaracterization. Accordingly, remand is appropriate.

¶48 *Child Support.* The trial court determined that the parties' incomes exceeded $7,000 per month. The court concluded that the parties' income was in excess of the statutory amount and set child support at $3,000, rather than the standard calculation of $2,370 per month. The court based this variation from the standard calculation on the parties' wealth.

¶49 We review child support orders for a manifest abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). To succeed on appeal, the appellant must show that the trial court's decision was *manifestly* unreasonable, or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Because the amount of child support rests in the sound discretion of the trial court, we will not

substitute our judgment for the trial court's where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances. *See In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807 (1990).

¶50 Here, the court made an extrapolated award based on RCW 26.19.020. When confronted with determining the child support obligation for parents whose combined net monthly income exceeds the statutory maximum, the court is not limited to the maximum amount of support set forth in the statutory economic schedule but is allowed to exceed this amount by providing written findings of fact. *See In re Marriage of Leslie*, 90 Wn. App. 796, 804, 954 P.2d 330 (1998) (citing RCW 26.19.020).

¶51 When determining any additional amount to be paid, the trial court must consider what amount is commensurate with the parties' income, resources, standard of living, and the totality of the financial circumstances. *Leslie*, 90 Wn. App. at 804. While the trial court must consider what additional amounts might be paid, the court retains the discretion to decide what amount is appropriate. *In re Marriage of Fiorito*, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

¶52 Ms. Marzetta first contends the court abused its discretion when setting the amount of child support. She contends that the court erred by concluding that Mr. Marzetta's income was in excess of $7,000, without determining a precise figure.

¶53 There is no support for Ms. Marzetta's argument that the income of a parent shown to exceed $7,000 must be calculated with precision. Ms. Marzetta is correct in her assertion that child support worksheets are mandatory, but RCW 26.19.071(1) does not require that the court make a precise determination of income. Instead, the court is required to consider all income and resources of each parent's household.

¶54 We conclude the court did not abuse its discretion in setting the support obligation. Because of the parties'

income and resources, and the complicated nature of their financial circumstances—including the fact that Mr. Marzetta established substantial trusts for his children—the trial court's award of child support is well within the court's discretion. We affirm the order of child support.

¶55 *Spousal Maintenance.* The trial court has discretion when awarding maintenance. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). "The party who challenges a maintenance award or a property distribution must demonstrate that the trial court manifestly abused its discretion." *In re Marriage of Williams*, 84 Wn. App. 263, 267, 927 P.2d 679 (1996). A trial court abuses its discretion when it does not base its award upon a fair consideration of the statutory factors under RCW 26-.09.090. *In re Marriage of Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462 (1993).

¶56 In determining maintenance, some of the nonexclusive factors the court must consider are: the postdissolution financial resources of the parties; their abilities to independently meet their needs; the time necessary for the party seeking maintenance to find employment; duration of the marriage; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet his needs and financial obligations. RCW 26.09.090; *Williams*, 84 Wn. App. at 267-68. Of primary concern are the parties' respective economic positions following dissolution. *In re Marriage of Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984).

¶57 The court's decision on maintenance "is governed strongly by the need of one party and the ability of the other party to pay an award." *In re Marriage of Foley*, 84 Wn. App. 839, 845-46, 930 P.2d 929 (1997). The only limitation on the maintenance award is that the amount and duration, in light of all the relevant factors, be just. *Mathews*, 70 Wn. App. at 122.

¶58 Mr. Marzetta contends the court abused its discretion by awarding Ms. Marzetta maintenance when she was

awarded substantial property and she failed to submit a monthly budget. Mr. Marzetta acknowledges that Ms. Marzetta has multiple sclerosis and that the trial court determined that she had limitations on her ability to work. However, Mr. Marzetta points out that Ms. Marzetta's physician testified that she could work in a self-paced position or a job that allowed her to work at home. Mr. Marzetta also believes that Ms. Marzetta should not be awarded maintenance because she is cohabiting with Stuart May and they operate a business together. Moreover, Mr. Marzetta believes that he should not be required to pay maintenance to Ms. Marzetta for 20 years based on a 13-year marriage. He also notes that the court's award of maintenance requires him to pay maintenance until he is 82 years old.

¶59 But the record of the trial court does provide evidence on most of the statutory factors. While the court did not consider the time it would take for Ms. Marzetta to complete training to find employment, the court did determine that she had limitations on her ability to work. The court also considered the standard of living during the marriage, the duration of the marriage, Ms. Marzetta's age and physical condition, and the ability of Mr. Marzetta to provide for both parties. RCW 26.09.090 does not assign additional importance to one statutory factor as opposed to another.

¶60 Mr. Marzetta's best argument is based on the court's determination that Ms. Marzetta's financial needs were unknown. He maintains that any award of spousal maintenance was improper because she failed to submit a budget. But he cites no case law demonstrating that a budget is a prerequisite to an award of maintenance or that an award of spousal maintenance is improper, or must terminate, based on cohabitation.

¶61 This case presented the trial court with a complicated task that required the consideration of many concerns. As with the issue of the child support determination, we are reluctant to reverse the court's award of

spousal maintenance given the complexity of the financial circumstances here. Reading the record, it is clear that the trial court considered the statutory factors. But we conclude remand is required in light of our decision regarding the division of property. The trial court necessarily considered the division of property when determining maintenance. *In re Marriage of Rink*, 18 Wn. App. 549, 552-53, 571 P.2d 210 (1977).

¶62 *Attorney Fees.* Ms. Marzetta seeks attorney fees based on RCW 26.09.140, which allows an award of attorney fees on the basis of need and ability to pay. We reject her request because she has shown no need and has the ability to pay her own attorney fees.

SWEENEY, A.C.J., and BROWN, J., concur.

Review denied at 157 Wn.2d 1009 (2006).